IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| DEBORAH JEAN JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 0:15-cv-4666-DCN |
| vs. ) | |
| ) | **ORDER** |
| NANCY A. BERRYHILL, *Acting* ) | |
| *Commissioner of Social Security*, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the court on United States Magistrate Judge Paige J. Gossett's Report and Recommendation ("R&R") that this court affirm Acting Commissioner of Social Security Nancy A. Berryhill's (the "Commissioner") decision denying plaintiff Deborah Jean Johnson's ("Johnson") application for disability insurance benefits ("DIB") and social security insurance benefits ("SSI"). For the reasons set forth below, the court rejects the R&R, and reverses and remands the Commissioner's decision.

## I.  BACKGROUND

### A.    Procedural History

Johnson filed an application for SSI on July 27, 2012 and an application for DIB on August 4, 2012. Tr. 12. In each application, Johnson alleged disability beginning January 25, 2004 (the "alleged onset date"). Id. The Social Security Administration denied Johnson's claims initially and on reconsideration. Id. Johnson requested a hearing before an administrative law judge ("ALJ"), and ALJ Thomas G. Henderson held a hearing on June 4, 2014. Tr. 9–54. The ALJ issued a decision on

1

June 26, 2014, finding that Johnson was not disabled under the Social Security Act (the "Act"). Tr. 9–32. Johnson requested Appeals Council review of the ALJ's decision. The Appeals Council declined Johnson's request, Tr. 1–4, rendering the ALJ's decision the final action of the Commissioner.

On November 19, 2015, Johnson filed this action seeking judicial review of the ALJ's decision. The magistrate judge issued the R&R on December 7, 2016, recommending that this court affirm the ALJ's decision. Johnson filed objections to the R&R on December 20, 2016, and the Commissioner responded to Johnson's objections on December 30, 2016. The matter is now ripe for the court's review.

**B.     Medical History**

Because Johnson's medical history is not directly at issue here, the court dispenses with a lengthy recitation thereof and instead notes a few relevant facts. Johnson was born on September 27, 1965 and was 38 years old on the alleged onset date. Tr. 24. She communicates in English and has an eighth grade education. Id.

**C.     ALJ's Decision**

The ALJ employed the statutorily required five-step sequential evaluation process to determine whether Johnson had been under a disability since the alleged onset date. The ALJ first determined that Johnson had not engaged in substantial gainful activity during the relevant period. Tr. 14. At step two, the ALJ found that Johnson suffered from the following severe impairments: borderline intellectual functioning, lumbar spondylosis, pancreatitis, and bilateral kidney stones. Id. At step three, the ALJ determined that Johnson's impairments did not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").

Tr. 15–19.  Most notably, the ALJ determined that Johnson did not show "deficits in adaptive functioning initially manifested during the developmental period," as required by Listing 12.05.  Tr. 16–18.  Before reaching the fourth step, the ALJ determined that Johnson had the residual functional capacity ("RFC") to perform: "[l]ight work as defined in 20 C.F.R. 404.1567(b) and 416.976(b) except that she can perform postural activities occasionally."  Tr. 19.  Additionally, the ALJ determined that Johnson's RFC was "limited to occupations, which involve the performance of simple, routine, repetitive tasks."  Id.  At step four, the ALJ found that Johnson was unable to perform her past relevant work, but based on her age, education, and RFC, Johnson could perform certain jobs that existed in significant numbers in the national economy.  Therefore, the ALJ concluded that Johnson had not been under a disability within the meaning of the Act since the alleged onset date.

## II.   STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made.  28 U.S.C. § 636(b)(1).  A party's failure to object is accepted as agreement with the conclusions of the magistrate judge.  See Thomas v. Arn, 474 U.S. 140, 149–50 (1985).  The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court.  Mathews v. Weber, 423 U.S. 261, 270–71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied."  Hays v.

Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Id. (internal citations omitted).  "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence."  Id.  Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]," not on the reviewing court.  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citation omitted).  However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."  Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987)

### III.   DISCUSSION

Johnson objects to the R&R's conclusion that the ALJ properly determined that her mental impairments did not meet the criteria set out in former Listing 12.05C.[1]

Listing 12.05C provides, in relevant part:

> [Intellectual Disability]: [Intellectual disability] refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e.,

---

[1] Listing 12.05C was deleted from the Listings as of January 17, 2017, pursuant to the final rule on Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138 (Sept. 26, 2016).  However, because 81 Fed. Reg. 66138-01 clearly states that the Social Security Administration does not intend for the court to apply the revised Listings retroactively in evaluating final agency decisions rendered prior to January 17, 2017, the court will analyze this case as if Listing 12.05C were still in effect.  See Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138 n.1 (Sept. 26, 2016) ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

> the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C.  A valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

Rothrock v. Colvin, 2016 WL 1175189, at *4 (M.D.N.C. Mar. 23, 2016).[2]  Thus, Listing 12.05C may be broken up into three prongs, requiring a claimant to show: (1) "deficits in adaptive functioning initially manifested during the developmental period"; (2) "[a] valid verbal, performance, or full scale I.Q. of 60 through 70"; and (3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function."  Hancock v. Astrue, 667 F.3d 470, 473 (4th Cir. 2012) (quoting Listing 12.05C).

The ALJ acknowledged that Johnson satisfied the latter two prongs of Listing 12.05C, Tr. 16, but determined that Johnson "failed to demonstrate deficits in adaptive functioning."  Tr. 18.  Johnson argues that the ALJ based his decision on mischaracterized, misinterpreted, and misstated facts.  Pl.'s Objections 3.  The issue before the court is whether the ALJ's adaptive functioning assessment was supported by substantial evidence.

---

[2] "Effective September 3, 2013, the Social Security Administration replaced the term 'mental retardation' with 'intellectual disability' in the Listings."  Rothrock, 2016 WL 1175189, at *4 n.5.  Nevertheless, some courts have continued to use the term "mental retardation" to reflect the language of the Listing at the time of the ALJ's decision.  Id. ("Because the underlying administrative proceedings concluded and this judicial action commenced before that regulatory change, this Recommendation utilizes the prior nomenclature.").  This change in terminology had already gone into effect at the time the ALJ issued its decision in this case—June 26, 2014.  Therefore, the court utilizes the term "intellectual disability."

"'[A]daptive functioning' refers to the individual's progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age . . . .'" Weatherford v. Colvin, No. 6:13-cv-1885, 2014 WL 3881056, at *9 (D.S.C. Aug. 5, 2014) (alterations in original) (quoting POMS § Dl 24515.056(D)(2), https://secure.ssa.gov/apps10/poms.nsf/lnx/0424515056). "Deficits in adaptive functioning can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." Jackson v. Astrue, 467 F. App'x 214, 218 (4th Cir. 2012) (quoting Atkins v. Virginia, 536 U.S. 304, 309 n. 3 (2002)).

The ALJ analyzed Johnson's adaptive functioning by discussing each of the above-listed functional areas, and concluded that,

> the claimant has failed to demonstrate deficits in adaptive functioning, as she was not enrolled in special education classes in school, she had a lengthy employment history, and managed her own finances. She was able to raise her children as a single parent, drive, shop, and seek health care when needed.

Tr. 17–18.

The court has reviewed the evidence the ALJ cited in support of his analysis, and finds that the ALJ's conclusion rests in part on a misapprehension and misapplication of various facts. The court begins with the ALJ's analysis of Johnson's "functional academic skills." In assessing this factor, the ALJ acknowledged that Johnson quit school in eighth grade,[3] but placed more weight on

---

[3] Though it is not entirely clear, the court assumes the ALJ was citing Johnson's decision to quit school in eighth grade as evidence that she exhibited deficits in academic functioning. To the extent the ALJ somehow believed that this evidence supported his finding that she did not exhibit such deficits, he was simply

6

the fact that the record did not corroborate Johnson's testimony that she was enrolled in special education classes. Tr. 17. The ALJ based this finding on records produced by Dorchester County School District Two, which indicated that the district had "no special [education] records on file." Tr. 195–98. It is notable the district did not actually produce any of Johnson's school records, despite the fact that the original records request was for "all records." Id. Though the court finds the ALJ's reliance on this evidence to be somewhat curious, it does not decide whether it was proper for the ALJ to discredit Johnson's testimony that she was enrolled in special education classes. Instead, the court decides that even if Johnson was never enrolled in special education classes, this fact does not justify the ALJ's failure to discuss or explain the weight given to other evidence of Johnson's academic deficits. Courts have treated a claimant's enrollment in special education classes as one of many possible indicators of academic deficits, along with reading and math skills, a history of failing classes and grade levels, limited academic achievement, and I.Q. scores. See Salmons v. Astrue, 2012 WL 1884485, at *7 (W.D.N.C. May 23, 2012) (finding deficits in claimant's functional academic skills based on claimant's enrollment in special education classes, claimant's "difficulty reading and writing," "basic math" skills, low grades, and low I.Q. scores); Rivers, 2011 WL 2581447, at *3 (finding deficits in claimant's functional academic skill based on claimant's status as a special needs student, low I.Q. scores, failure go beyond 9th grade, low grades, and "functional illiteracy"). Because courts have recognized that deficits in academic skill can

---

mistaken. See Rivers v. Astrue, No. 8:10-cv-00314, 2011 WL 2581447, at *3 (D.S.C. June 28, 2011) (citing the fact that the "[p]laintiff dropped out of school in the ninth grade" in finding that the plaintiff demonstrated deficits in his academic functioning).

manifest themselves in different ways, it does not make sense to use the absence of one possible manifestation to discount evidence of other manifestations. Put differently, the fact that the claimant may not have attended special education classes cannot be treated as dispositive of the issue when the record contains other evidence of deficits in academic skill.

Here, the record showed that Johnson did not progress beyond the eighth grade and did not earn a GED. Tr. 17, 24. Johnson testified that she had already failed eighth grade twice at the time she dropped out of school. Tr. 49. There is also evidence that Johnson reads and performs arithmetic at a third grade level, and spells at a second grade level.[4] Tr. 288. Indeed, Dr. James Way ("Dr. Way"), who administered the tests that provided these results noted that Johnson's reading, spelling, and arithmetic test results demonstrated "very limited academic skills."[5] Id. Finally, it is undisputed that Johnson received a verbal I.Q. score of 62, a performance I.Q. score of 68, and a full scale I.Q. score of 62 in December 9, 2004.[6] Id. Thus, there is a great deal of evidence that Johnson did manifest deficiencies in her academic skills. The ALJ did not even mention most of this evidence and never explained why he discounted any of it.

---

[4] Indeed, the ALJ appears to have credited such evidence in his assessment of Johnson's communication skills, noting that her "reading level is at the 2nd to 3rd grade level." Tr. 17.

[5] The court is aware that the ALJ gave "limited weight" to Dr. Way's opinions that Johnson was unable to function at her full potential and was incapable of managing her funds. Tr. 22. However, it does not appear that the ALJ gave limited weight to Dr. Way's assertion that Johnson's test results showed "very limited academic skills," and even if he did, it would not disturb the court's conclusion, as the test results speak for themselves.

[6] In the absence of any evidence of a change in the claimant's intellectual functioning, the law assumes that the claimant's IQ has remained relatively constant. Luckey v. U.S. Dep't of Heath & Human Servs., 890 F.2d 666, 668 (4th Cir. 1989).

The ALJ's assessment of Johnson's self-care and home living skills is also problematic. The ALJ found that Johnson exhibited grooming, feeding, and independent living skills because she "takes her medications independently," "cares for her own hygiene," "independently raised twins as a single parent," and "helps her disabled parents." Tr. 17. However, the latter two of these findings are lacking in evidentiary support. The ALJ mentions the fact that Johnson raised her children as a single parent twice. Tr. 17, 18. Johnson does not dispute that she raised her children without their father, but the evidence indicates that she has "resided with her parents all her life." Tr. 286. By highlighting the fact that Johnson raised her children "independently" or as a "single parent," the ALJ's decision clearly suggests that Johnson raised the children without any significant help from others. This is the only reason why Johnson's single parent status would be relevant. Perhaps it is unduly speculative to assume that Johnson's parents helped her raise her children, just because Johnson has lived with her parents her entire life. But it was equally, if not more, speculative for the ALJ to assume that Johnson raised her children "independently," just because she did not raise them with their father. The court has searched the exhibits cited by the ALJ in connection with this finding and cannot see any evidence of how Johnson's children were raised. Thus, the court concludes that the ALJ's finding that Johnson raised her children "independently" is not supported by the record.

The ALJ's finding that Johnson "helps her disabled parents" is even more deficient. The ALJ cites an August 9, 2012 Function Report for this proposition, Tr. 17 (citing Tr. 205), but the Function Report directly contradicts the ALJ's analysis.

9

The Function Report contains the question: "Do you take care of anyone else such as a wife/husband, children, grandchildren, parents, friend, other?" Tr. 205 (emphasis added). Johnson unambiguously checked the answer "no." Id. The Function Report does not contain any other information that would suggest Johnson cares for her parents. It is possible that the ALJ intended to cite Johnson's hearing testimony, where she was asked whether she "help[ed] [her] parents out during the day," to which she responded that she "just [] kind of pick[s] up" by "trying to clean up a little bit around the house. That's it." Tr. 36. As an initial matter, this answer indicates that Johnson is, at most, marginally helpful around the house and provides very little support for the ALJ's conclusion that Johnson demonstrated adequate self-care and home living skills. More importantly, the ALJ's statement that Johnson "helps her disabled parents" appears to suggest that she acts in some sort of caretaking capacity. This is clearly not supported by the record. If the ALJ simply wished to convey that Johnson had the ability to "clean up a little bit around the house," Tr. 36, he should have phrased that finding more clearly. Because the ALJ does not actually cite any evidence that supports his finding that Johnson "helps her disabled parents," and that finding appears to be a somewhat misleading evaluation of Johnson's testimony, the court finds that it is cannot form the basis of the ALJ's decision.

The R&R dismisses Johnson's objections by characterizing them as an invitation to simply reweigh the evidence. R&R at 18. The magistrate judge correctly notes that "[t]he fact that Johnson can point to other evidence that supports her position does not render the ALJ's decision unsupported [by substantial

evidence]." Id. It is axiomatic that the court cannot reweigh the evidence on appeal. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) ("[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence."). However, the court concludes that the problems with the ALJ's analysis go well beyond his weighing of the evidence.

"The Commissioner has the duty to set forth and analyze in his decision all relevant evidence and to explain the weight given to all probative evidence." Solesbee v. Astrue, No. 2:10-cv-1882, 2011 WL 5101531, at *2 (D.S.C. Oct. 25, 2011). This duty is necessary to ensure that the court is able to conduct a meaningful review of the ALJ's decision. See DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983) (recognizing that "judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator."); Alexander v. Astrue, No. 4:08-cv-3384, 2010 WL 1254945, at *5 (D.S.C. Mar. 23, 2010) ("If the ALJ does not analyze all the evidence and fully explain the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine the conclusions reached are rational."). The touchstone for determining what evidence must be addressed is whether the evidence is so material that failing to address it would prevent the court from determining if the ALJ's decision was supported by substantial evidence. Seabolt v. Barnhart, 481 F. Supp. 2d 538, 548 (D.S.C. 2007) ("The ALJ is not required to discuss every piece of evidence,

but if he does not mention material evidence, the court cannot say his determination was supported by substantial evidence.").

The ALJ's analysis of Johnson's functional academic skills was obviously flawed in this regard. As explained above, the ALJ completely ignored significant evidence of Johnson's academic shortcomings. While the ALJ did acknowledge that Johnson quit school in eighth grade, he still failed to explain why he did not credit such evidence. Because the ALJ failed to conduct a thorough review of the evidence, the court cannot say that his conclusion that Johnson failed to establish deficits in her functional academic skills was supported by substantial evidence.

The ALJ's analysis of Johnson's self-care and home living skills was also flawed to the extent he relied on his finding that Johnson "independently raised twins as a single mother" and "helped her disabled parents." Tr. 17. These findings lacked evidentiary support and formed an important part of the ALJ's analysis. In fact, the ALJ specifically mentioned Johnson's ability to raise her children in his summary of her adaptive functioning. Tr. 18. There may well be evidence in the record that would support the ALJ's conclusion, but the evidence cited in the ALJ's decision is not sufficient. The court is not empowered to salvage the ALJ's decision with post-hoc rationalizations. N.H. ex rel. Eure v. Colvin, 2013 WL 6410378, at *2 (E.D.N.C. Dec. 9, 2013). To the extent the ALJ failed to explain his decision, the court cannot explain it for him. Therefore, remand for further consideration is appropriate.

On remand, the ALJ should reevaluate the record and provide a more thorough discussion of Johnson's adaptive functions, taking particular care to explain the weight given to evidence that weighs against the ALJ's conclusion. The ALJ

should also consider Johnson's remaining objections. In particular, the ALJ should consider how the evidentiary issues discussed in this decision might impact the weight given to the medical opinion evidence.

## IV.   CONCLUSION

Based on the foregoing, the court **REJECTS** the magistrate judge's R&R, **REVERSES** the Commissioner's decision, and **REMANDS** the case for further administrative proceedings.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 27, 2017**
**Charleston, South Carolina**